COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA BORAK (SBN 259434)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
email: marco@coastlawgroup.com

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

COASTAL ENVIRONMENTAL RIGHTS
FOUNDATION,
a non-profit corporation,

       Plaintiff,

    v.

NATIONAL STEEL & METALS, INC, a
California corporation,

      Defendant.

Civil Case No.: **'16 CV 0291 W     JLB**

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
CIVIL PENALTIES**

**(Federal Water Pollution Control Act,
 33 U.S.C. § 1251 *et seq*.)**

Coastal Environmental Rights Foundation, ("CERF" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.     JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*. (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On May 11, 2015, Plaintiff issued a 60-day notice letter ("Notice Letter") to National Steel & Metals, Inc. ("National Steel" or "Defendant") regarding its violations of the Clean Water Act, and indicating Plaintiff's intention to file suit against Defendant. The Notice Letter was sent to the registered agent for National Steel, as required by 40 C.F.R. § 135.2(a)(2), the Facility, as well as the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, San Diego Region ("Regional Board") as required by CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of the Notice Letter is attached hereto as Exhibit A and incorporated herein.

3.      More than sixty days has passed since the Notice Letter was served on Defendant and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. (33 U.S.C. § 1365(b)(1)(B)). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

4.      Venue is proper in the Southern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are

located within this judicial district.

## II.      INTRODUCTION

5.        This complaint seeks relief for the Defendant's unlawful discharge of pollutants into waters of the United States from its operations at 2292 National Ave, San Diego, California, 92113 ("National Facility" or "Site"). Specifically, Defendant discharges storm water runoff from the Site into storm drains, Chollas Creek, downstream to San Diego Bay, and ultimately the Pacific Ocean (collectively referred to as the "Receiving Waters"). This complaint also seeks relief for Defendant's violations of the filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of California's General Permit for Discharges Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 97-03-DWQ, as amended by Order No. 97-03-DWQ)* ("Industrial Permit"). This complaint further seeks relief to prevent discharges in violation of the Industrial Permit as amended by *Order No. 2014-0057-DWQ*. These are ongoing and continuous violations of the Clean Water Act and the Industrial Permit.

6.        With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from industrial operations such as the National Facility, flow into City of San Diego storm drain systems, Chollas Creek, San Diego Bay and ultimately the Pacific Ocean. This discharge of pollutants in storm water from industrial activities such as the National Facility contributes to the impairment of downstream waters and compromises or destroys their beneficial uses.

## III.    PARTIES

### A.      Coastal Environmental Rights Foundation

7.        Plaintiff CERF is a non-profit public benefit corporation organized under the laws of the State of California.

8.        CERF's office is located at 1140 South Coast Highway 101, Encinitas

California, 92024.

9.     CERF was founded by surfers in North San Diego County and active throughout California's coastal communities. CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

10.     Plaintiff has thousands of members who live and/or recreate in and around Chollas Creek, San Diego Bay, and the Pacific Ocean.

11.     Plaintiff's members use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife, and engage in scientific study including monitoring activities, among other activities. Defendant discharges pollutants from the Sites to the Receiving Waters used by Plaintiff's members. Thus, Defendant's discharge of pollutants impairs Plaintiff's members' uses and enjoyment of the Receiving Waters.

12.     The interests of Plaintiff's members have been, are being, and will continue to be adversely affected by the Defendant's failure to comply with the Clean Water Act and the Industrial Permit.  The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at law.

## B.     The National Facility Owners and/or Operators

13.     Plaintiff is informed and believes that National Steel & Metals, Inc. is a private corporation organized under the laws of the State of California, and is located in San Diego, California.

14.     Plaintiff is informed and believes, and thereon alleges that Defendant National Steel & Metals, Inc is current owner and operator of the property located at 2292 National Avenue, San Diego, California, 92113 ("Property").

15.     Plaintiff is informed and believes, and thereon alleges National Steel has

owned and operated the National Facility since at least May 11, 2010.

## IV.    STATUTORY BACKGROUND

### A.    The Clean Water Act

16.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.     Section 402(p) of the CWA establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. (33 U.S.C. § 1342(p)). States with approved NPDES permit programs are authorized by Section 402(b) to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. (33 U.S.C. § 1342).

18.     Section 402(b) of the CWA allows each state to administer its own EPA-approved permit for storm water discharges. (33 U.S.C. § 1342(b)). In California, the State Board is charged with regulating pollutants to protect California's water resources.

19.     The Industrial Permit is a statewide general NPDES permit issued by the State Board pursuant to Section 402 of the CWA that regulates the discharge of pollutants from industrial sites. (33 U.S.C. § 1342).

20.     Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation… or an order issued by the Administrator or a State with respect to such a standard or limitation." (33 U.S.C. § 1365(a)(1)).

21.     An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

22.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring after January

27, 2009. (33 U.S.C. § 1319(d); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §19.4).

23.     Section 505(d) of the Clean Water Act permits prevailing parties to recover costs, including attorneys' and experts' fees. (33 U.S.C. § 1365(d)).

**B.     California's Industrial Permit**

24.     The Industrial Permit, NPDES General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ  and Order No. 2014-0057-DWQ is an NPDES permit adopted pursuant to Section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R § 123.25.  In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Industrial Permit and comply with its terms, or obtain and comply with an individual NPDES permit. The Industrial Permit as amended pursuant to Order No. 2014-0057-DWQ, became effective July 1, 2015 ("New Industrial Permit").

25.     Failure to comply with the Industrial Permit or New Industrial Permit constitutes a Clean Water Act violation. (Industrial Permit, § C.1; New Industrial Permit §XXI.A.).

26.     Discharge Prohibitions A(1) of the Industrial Permit and III.B. of the New Industrial Permit prohibit the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by an NPDES permit, to the waters of the United States. Discharge Prohibition A(2) of the Industrial Permit and III.C. of the New Industrial Permit prohibit storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance.

27.     Effluent limitations B(3) of the Industrial Permit and Sections I.D and V.A. of the New Industrial Permit require facility operators to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant

6

Control Technology ("BCT") for conventional pollutants.

28.     Industrial Permit Receiving Water Limitation C(1) and New Industrial Permit Receiving Water Limitation VI.B. prohibit storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impacts human health or the environment.

29.     Industrial Permit Receiving Water Limitation C(2) and New Industrial Permit Receiving Water Limitation VI.A. prohibit storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

30.     Section A(1) and Provision E(2) of the Industrial Permit require dischargers to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") by October 1, 1992, or prior to beginning industrial activities, that meets all the requirements of the Industrial Permit. Sections X.A. and B. of the New Industrial Permit require development and implementation of site-specific SWPPPs by July 1, 2015 or upon commencement of industrial activity.

31.     The objective of the SWPPP is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Sites, and identify and implement site-specific Best Management Practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges. (Industrial Permit, Section A(2); New Industrial Permit, Section X.C.1).

32.     To ensure its effectiveness, the SWPPP must be evaluated on an annual basis, and it must be revised as necessary to ensure compliance with the Permit. (Industrial Permit, Sections A(9), (10); New Industrial Permit, Sections XA. And X.B.1.).

33.     Sections A(3) through A(10) of the Industrial Permit and Sections X.A to X.I. of the New Industrial Permit set forth the requirements for a SWPPP.

34.     The SWPPP must include a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, and areas of industrial activity. (Industrial Permit, Section A(4); New Industrial Permit, Section X.E.).

35.     Dischargers are also required to prepare and implement a monitoring and reporting program ("M&RP"). (Industrial Permit, Sections E(3), B(1); New Industrial Permit, Section XI).

36.     The objective of the M&RP is to ensure that BMPs have been adequately developed and implemented, revised as necessary, and to ensure that storm water discharges are in compliance with the Industrial Permit (up to July 1, 2015) and New Industrial Permit (July 1, 2015 and thereafter) Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. (Industrial Permit, Section B(2); New Industrial Permit, Finding J.56).

37.     The Industrial Permit and New Industrial Permit require dischargers to conduct visual observations for the presence of unauthorized non-storm water discharges, to document the source of any discharge, and to report the presence of any discolorations, stains, odors, and floating materials in the discharge.

38.     The Industrial Permit and New Industrial Permit require dischargers to visually observe drainage areas during the wet season (October 1 - May 30) and to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants.

39.     Both the Industrial Permit and New Industrial Permit require dischargers to maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges.

40.     The Industrial Permit requires dischargers to collect a sample from all discharge points during the first storm event of the wet season and during at least one

8

other storm event of the wet season, for a total of two samples per wet season. (Industrial Permit, Section (B)(5)). The New Industrial permit requires dischargers to collect and analyze storm water samples from two storm events with the first half of each reporting year (July 1 to December 31) and two from the second half (January 1 to June 30). (New Industrial Permit, Section XI.B.2.).

41.     Dischargers must analyze each sample for pH, total suspended solids, oil and grease, and for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

42.     Dischargers must submit "Annual Reports" to the Regional Board in July of each year. (Industrial Permit, Section B(14); New Industrial Permit, Section XVI.A.).

## V.     STATEMENT OF FACTS

### A.     National Facility

43.     Plaintiff is informed and believes, and thereon alleges the National Facility is a ferrous steel fabrication facility. The National Facility belongs to Sector AA of the Industrial Permit and its standard industrial classification (SIC) code is 3441.

44.     Plaintiff's investigators have conducted observations of the National Facility.

45.     Plaintiff's investigators have collected industrial storm water runoff samples from the National Facility.

46.     Plaintiff is informed and believes, and thereon alleges the National Facility fabricates metal products.

47.     Plaintiff is informed and believes, and thereon alleges various materials comprised of ferrous and non-ferrous materials, as well as open drums, machinery, rusting equipment, rusting metal objects, uncovered trash bins, sediment, and steel shavings are stored onsite, outside and exposed to rainfall.

48.      Plaintiff is informed and believes, and thereon alleges particulates from operations, oil, grease, bacteria, suspended solids, plastics, and metals such as

9

aluminum, copper, lead, iron and zinc materials are exposed to storm water at the National Facility.

49.     Plaintiff is informed and believes, and thereon alleges that storm water is conveyed from the northern and western part of the Site to the south-east, where it flows as laminar sheet flow to National Ave.

50.     During rain events, water visibly laden within contaminants and red in color flows down the front of the National Facility onto National Avenue and into City of San Diego storm drains.

51.     The National Facility discharges into storm drains that discharge into Chollas Creek, downstream to the San Diego Bay, and ultimately the Pacific Ocean.

52.     The EPA promulgated regulations for the Section 402 NPDES permit program defining waters of the United States. (S*ee* 40 C.F.R. § 122.2). The EPA interprets waters of the United States to include not only traditionally navigable waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and other waters including intermittent streams that could affect interstate commerce. The CWA requires any person who discharges or proposes to discharge pollutants into waters of the United States to submit an NPDES permit application. (40 C.F.R. § 122.21).

53.     The Clean Water Act confers jurisdiction over non-navigable waters that are tributary to traditionally navigable waters where the non-navigable water at issue has a significant nexus to the navigable water. (*See Rapanos v. United States,* 547 U.S. 715 (2006).  A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." (*Id.* at 780).

54.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. (*Id.* at 783).

55.     Information available to Plaintiff indicates that each of the surface waters

into which the National Facility discharges polluted storm water are tributaries to traditional navigable waters, such as Chollas Creek, San Diego Bay and the Pacific Ocean.

56.     Plaintiff is informed and believes, and thereon alleges the National Facility's polluted discharges cause and/or contribute to the impairment of water quality in Chollas Creek and San Diego Bay. Elevated levels of copper, diazinon, lead, zinc, phosphorous, bacteria, nutrients, and trash have resulted in the inability of Chollas Creek to support its beneficial uses.

57.     Water Quality Standards are pollutant concentration levels determined by the State Board and the EPA to be protective of the beneficial uses of the receiving waters.  Discharges above Water Quality Standards contribute to the impairment of the receiving waters' beneficial uses.

58.     The applicable Water Quality Standards include, but are not limited to, those set out by the State of California in the Criteria for Priority Toxic Pollutants, 40 C.F.R. § 131.38 , ("California Toxics Rule" or "CTR") and in the Basin Plan. The CTR limits are, in part, as follows: lead – .065 milligrams per liter (mg/L); copper – .013 mg/L; zinc – .12 mg/L. These numeric criteria are set to protect human health and the environment in the State of California. The CTR limits represented are the maximum concentration levels permissible to achieve health and environmental protection goals.

59.     EPA Benchmarks are the pollutant concentrations above which EPA has determined are indicative of a facility not successfully developing or implementing BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants. (See Multi-Sector General Permits for Stormwater Discharges Associated with Industrial Activity (MSGP), 2015, §§6.2.1, 8.AA, Table 8.AA-1). The benchmark values provide an appropriate level to determine whether a facility's storm water pollution prevention measures are successfully implemented. (MSGP Fact Sheet, p. 52). Failure to conduct and document corrective action and revision of control measures in response to benchmark exceedances constitutes a permit violation. (*Id.*, at p. 65).

60.     EPA has established the following benchmark values for Sector AA1, Fabricated Metal Products: aluminum 0.75 mg/L; iron: 1.0 mg/L; zinc (freshwater)[1] – 0.04-.26 mg/L; and nitrate plus nitrite nitrogen: .68 mg/L. (MSGP, §8.AA.5, Table 8.AA-1).

61.     The Regional Board's Basin Plan establishes water quality objectives, implementation plans for point and nonpoint source discharges, and prohibitions, and furthers statewide plans and policies intended to preserve and enhance the beneficial uses of all waters in the San Diego region. (*See* Basin Plan at p. 1-1). The Basin Plan identifies several beneficial uses for regional waters, including for Chollas Creek. (Basin Plan, Table 2-2).

**B.     Past and Present Industrial Activity at the National Facility**

62.     Plaintiff is informed, believes, and thereon alleges that Defendant has failed to enroll under the Industrial Permit or New Industrial Permit and has not filed a Notice of Intent or a No Exposure Certification.

63.     Plaintiff is informed, believes, and thereon alleges that the Defendant engages in manufacturing metal products using raw material steels and ferrous alloys.

64.     The potential pollutant sources associated with the industrial activities at the National Facility include, but are not limited to: the metal outdoor storage areas; outdoor machinery; parking areas; shipping and receiving areas; loading and unloading areas; maintenance areas; piles of steel cuttings; and the on-site material handling equipment.

65.     Plaintiff is informed, believes, and thereon alleges that pollutants present in storm water discharged from the National Facility therefore include but are not limited to: toxic metals such as copper, iron, zinc, lead, nickel, magnesium and aluminum; petroleum products including oil, fuel, and grease; chemical admixtures, acids and solvents; total suspended solids and pH-affecting substances; phosphorous;

_____

[1] The zinc benchmark is dependent on water hardness.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

and fugitive and other dust, dirt and debris.

66.     Based upon Plaintiff's investigation, Plaintiff is informed, believes, and thereon alleges Defendant stores metal and other materials outside where it is exposed to storm water.

67.     Plaintiff is informed, believes, and thereon alleges that there are drums and other containers stored on-Site that are uncovered and/or uncontained.

68.     Plaintiff is informed, believes, and thereon alleges that polluted storm water flows offsite from the National Facility as sheet flow onto National Avenue, where it is conveyed into area storm drains and the Chollas Creek drainage channel.

69.     Plaintiff is informed, believes, and thereon alleges that the National Facility lacks effective BMPs to control the flow of storm water from the Facility into the City of San Diego and Chollas Creek drainage channels. As a result, suspended solids, metal particles, and other pollutants have been and continue to be conveyed from the National Facility into the Chollas Creek and San Diego Bay drainage channels.

70.     As a result, Plaintiff is informed, believes, and thereon alleges that during rain events, storm water carries pollutants from the National Facility outdoor storage areas, bins and dumpsters, floor contaminants, equipment, uncontained metal drums, and other sources directly into the storm drains and Chollas Creek and San Diego Bay drainage channels.

71.     Plaintiff is informed, believes, and thereon alleges that the National Facility pollution control measures are ineffective in controlling the exposure of pollutant sources to storm water at the National Facility.

  **C.   The National Facility and its Associated Discharge of Pollutants**

72.     Plaintiff is informed, believes, and thereon alleges that with every significant rain event, the National Facility discharges polluted storm water from the industrial activities at the facility via the City of San Diego's storm drain system and into the Receiving Waters.

73.     Plaintiff is informed, believes, and thereon alleges that the Receiving

Waters into which the National Facility discharges polluted storm water are waters of the United States and therefore the Industrial Permit and New Industrial Permit properly regulate discharges to those waters.

74.     Surface waters that cannot support their Beneficial Uses listed in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act. According to the 2010 303(d) List of Impaired Water Bodies, Chollas Creek is impaired for copper, diazinon, bacteria, lead, phosphorous, nitrogen, trash, and zinc.

75.     San Diego Bay, near Chollas Creek, is listed as impaired for benthic community effects, PCBs, and sediment toxicity.

76.     Because discharges from the National Facility contain particulates and metals, the National Facility's polluted discharges cause and/or contribute to the impairment of water quality in the Receiving Waters.

77.     Plaintiff is informed, believes, and thereon alleges that the storm water discharged from the National Facility has exceeded the CTR Water Quality Standards applicable to zinc, lead, and copper in California.

78.     Plaintiff is informed, believes, and thereon alleges that the storm water discharged from the National Facility has also exceeded the EPA Benchmark values and New Industrial Permit Numeric Action Levels for aluminum, iron and magnesium.

79.     Plaintiff's National Facility water monitoring samples indicate exceedances as high as 50 to 70 times applicable water quality standards.

80.     Plaintiff is informed, believes, and thereon alleges that during every significant rain event that has occurred at the National Facility since May 11, 2010 through the present, Defendant has discharged and continues to discharge storm water from the National Facility that contains pollutants at levels in violation of the prohibitions and limitations set forth in the Industrial Permit and other applicable Water Quality Standards.

81.     Plaintiff is informed, believes, and thereon alleges, from visual observations, sample results, and investigations available to Plaintiff, Defendant has

failed and continues to fail to develop and/or implement adequate BMPs to prevent the discharge of polluted storm water from the National Facility. The inadequacy of the BMPs at the National Facility is a result of the Defendant's failure to develop and implement an adequate SWPPP and companion M&RP for this Site. Therefore, storm water discharges from the National Facility contain pollutant concentration levels that are above EPA Benchmarks, Numeric Action Levels and applicable Water Quality Standards.

82.     Plaintiff is informed, believes, and thereon alleges that since at least May 11, 2010 through the present, Defendant has failed to develop and implement BMPs that meet the standards of BAT/BCT at the National Facility in violation of Effluent Limitation B(3) of the Industrial Permit. Each day that Defendant has failed and continues to fail to implement adequate BMPs to achieve BAT/BCT constitutes a separate violation of the Industrial Permit and the CWA.

83.     Based on its investigation of the National Facility, Plaintiff is informed, believes, and thereon alleges Defendant has failed to develop and implement an adequate SWPPP since at least May 11, 2010 through the present. Each day that Defendant has failed and continues to fail to implement an adequate SWPPP constitutes a separate violation of the Industrial Permit and the CWA.

84.     Plaintiff is informed, believes, and thereon alleges that Defendant has failed to submit written reports to the Regional Board identifying BMPs necessary to achieve BAT/BCT at the National Facility since at least May 22, 2010, in violation of Receiving Water Limitations C(3) and C(4) of the Industrial Permit and New Industrial Permit Receiving Water Limitation VI.A. Each day that Defendant has operated the National Facility without meeting this reporting requirement of the Industrial Permit constitutes a separate violation of the Industrial Permit and the CWA.

85.     Plaintiff is informed, believes, and thereon alleges that Defendant has not developed or implemented a monitoring, reporting and sampling program for the National Facility. Plaintiff is informed, believes, and thereon alleges that Defendant has

not sampled its storm water discharges or conducted visual monitoring as required since at least May 11, 2010.

## VI.        CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discharges of Pollutants Without an NPDES Permit
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

86.        Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

87.        Section 301(a) of the Act, 33 U.S.C. §1331(a), prohibits the discharge of any pollutant from any point source to waters of the United States, except for discharges in compliance with an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. §1342(p).

88.        Defendant discharges pollutants from the National Facility into Chollas Creek, San Diego Bay and Pacific Ocean through storm water discharges.

89.        Plaintiff is informed, believes, and thereon alleges that from at least May 11, 2010 to the present, Defendant discharged pollutants without a valid Notice of Intent or No Exposure Certification in place as required by Sections 301(a) and 402(p)(2)(B) of the Act, 33 U.S.C. §1331(a), and §1342(p)(2)(B).

90.        Plaintiff is informed, believes, and thereon alleges that from at least May 11, 2010 to the present, Defendant has discharged pollutants in excess of permit limits, in violation of the Industrial Permit and New Industrial Permit discharge prohibitions and in violation of Section 301(a) of the Act, 33 U.S.C. §1331(a).

91.        Plaintiff is further informed, believes, and thereon alleges that from at least May 11, 2010 to the present, Defendant has operated without an individual NPDES permit for its polluted storm water discharges in violation of Sections 301(a) and 402(p)(2)(B) of the Act, 33 U.S.C. §1331(a), and §1342(p)(2)(B).

92.        The polluted storm water discharges from the National Facility are therefore unlawful discharges from point sources into waters of the United States within the meaning of Section 301 of the Act, 33 U.S.C. §1331.

93.     These violations are ongoing and continuous. Defendant will continue to be in violation of the Industrial Permit requirements each day the National Facility discharges contaminated storm water without an NPDES permit.

94.      Every day that Defendant has discharged and/or continues to discharge polluted storm water from the National Facility without an NPDES permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

95.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 11, 2010 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

96.     Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## SECOND CAUSE OF ACTION
**Discharges of Contaminated Storm Water in
Violation of the Industrial Permit's Discharge Prohibitions and
Receiving Water Limitations and the Clean Water Act
(Violations of 33 U.S.C. §§ 1311(a), 1342)**

97.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

98.     Plaintiff is informed, believes, and thereon alleges that as a result of the operations at the National Facility, during every significant rain event, storm water containing pollutants harmful to fish, plant, bird life, and human health is discharged from the National Facility to the Receiving Waters.

99.     Plaintiff is informed, believes, and thereon alleges that Defendant's discharges of contaminated storm water have caused and continue to cause pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Permit and Section VI.C of the New Industrial Permit.

100.     Plaintiff is informed, believes, and thereon alleges that these discharges of

contaminated storm water have adversely affected, and continue to adversely affect, human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Permit and Section VI.B. of the New Industrial Permit.

101.    Plaintiff is informed, believes, and thereon alleges that these discharges of contaminated storm water have caused or contributed to and continue to cause or contribute to an exceedance of Water Quality Standards in violation of Receiving Water Limitation C(2) of the Industrial Permit and VI.A. of the New Industrial Permit.

102.    Plaintiff is informed, believes, and thereon alleges that from at least May 11, 2010 through the present, Defendant has discharged, and continues to discharge, contaminated storm water from the National Facility to Receiving Waters in violation of the prohibitions of the Industrial Permit.  Thus, Defendant is liable for civil penalties for at 1,825 violations of the Industrial Permit and the CWA.

103.    Plaintiff is informed, believes, and thereon alleges that Defendant's violations of the Industrial Permit and the CWA are ongoing.

104.    Defendant will continue to be in violation of the Industrial Permit requirements each day the National Facility discharges contaminated storm water in violation of Industrial Permit prohibitions.

105.     Every day that Defendant has discharged and/or continues to discharge polluted storm water from the National Facility in violation of the Industrial Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

106.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 11, 2010 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

107.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm

18

they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## THIRD CAUSE OF ACTION
**Failure to Develop and/or Implement BMPs that Achieve Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology In Violation of the Industrial Permit and the Clean Water Act (Violations of 33 U.S.C. §§1311, 1342)**

108.   Plaintiff incorporated the preceding paragraphs as if fully set forth herein.

109.   Plaintiff is informed, believes, and thereon alleges that Defendant has failed to develop and/or implement BMPs that achieve compliance with BAT/BCT requirements of the Industrial Permit and the CWA.

110.   Sampling of the National Facility's storm water discharges as well as Plaintiff's observations and local agency inspections of the National Facility demonstrate that Defendant has not developed and has not implemented BMPs that meet the standards of BAT/BCT. Thus, Defendant is in violation of Effluent Limitations of the Industrial Permit and New Industrial Permit.

111.   Plaintiff is informed, believes, and thereon alleges that Defendant has been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit and the CWA every day since at least May 11, 2010, and of the BAT/BCT requirements of the New Industrial Permit since July 1, 2015.

112.   Plaintiff is informed, believes, and thereon alleges that Defendant's violations of the Effluent Limitations and the CWA are ongoing.

113.   Defendant will continue to be in violation every day the National Facility operates without adequately developing and/or implementing BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the National Facility.

114.   Every day that Defendant operates the National Facility without adequately developing and/or implementing BMPs that achieve BAT/BCT in violation of the Industrial Permit or New Industrial Permit is a separate and distinct violation of

Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

115.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 11, 2010 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

116.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

**FOURTH CAUSE OF ACTION**
**Failure to Develop and/or Implement an Adequate**
**Storm Water Pollution Prevention Plan**
**in Violation of the Industrial Permit and Clean Water Act**
**(Violations of 33 U.S.C. §§ 1311, 1342)**

117.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

118.    Plaintiff is informed, believes, and thereon alleges that Defendant has failed to develop and/or implement an adequate SWPPP for the National Facility that meets the requirements set out in Section A and Provision E of the Industrial Permit and Section X of the New Industrial Permit.

119.    Defendant has been in violation of the SWPPP requirements every day since at least May 11, 2010.

120.    Defendant's violations of the Industrial Permit, New Industrial Permit and the CWA are ongoing.

121.    Defendant will continue to be in violation of the SWPPP requirements every day the National Facility operates with an inadequately developed and/or implemented SWPPP for the National Facility.

122.    Each day that Defendant operates the National Facility without developing

and/or implementing an adequate SWPPP is a separate and distinct violation of Section 301(a) of the CWA 33 U.S.C. §1311(a).

123.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 11, 2010 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

124.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## FIFTH CAUSE OF ACTION
### Failure to Conduct Required Rain Event Sampling in Violation of the Industrial Permit

125.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

126.    Plaintiff is informed, believe, and thereon allege that Defendant is in violation of Industrial Permit Section B(7) and B(5) by failing to collect at least two samples of storm water runoff, including one set of samples during the first storm event of the wet season.

127.    Plaintiff is informed, believes, and thereon alleges that Defendant failed to collect two samples during every wet season since May 11, 2010.

128.    Information available to Plaintiff indicates that there were numerous qualifying rain events during the 2010, 2011, 2012, 2013, 2014, and 2015 wet seasons.

129.    Defendant has been in violation of the Industrial Permit and the CWA for each day the National Facility operates without sampling as required by the Industrial Permit.

130.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring

from May 11, 2010 to the presents, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

131.     An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a).  Continuing commission of the omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## SIXTH CAUSE OF ACTION
### Failure to Submit Reports in
### Violation of the Industrial Permit

132.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

133.     Plaintiff is informed, believes, and thereon alleges that Defendant failed to submit annual reports as required in violation of Section B(13) and B(14) of the Industrial Permit.

134.     Defendant has been in violation each day the National Facility operates without reporting as required by the Industrial Permit.

135.     Defendant's violations of the Industrial Permit and the CWA are ongoing.

136.     Every day Defendant operates the National Facility without reporting as required by the Industrial Permit is a separate and distinct violation of the Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

137.     Defendant has been in daily and continuous violation of the Industrial Permit's reporting requirements every day since at least May 11, 2010.

138.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 11, 2010 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

139.     An action for injunctive relief under the CWA is authorized by 33 U.S.C.

§ 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## VII.   RELIEF REQUESTED

140.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   A Court order declaring Defendant to have violated and to be in violation of the Clean Water Act for its unlawful discharges of pollutants from the National Facility (1) without an NPDES permit, and (2) in violation of the substantive and procedural requirements of the Industrial Permit, and as of July 1, 2015, the New Industrial Permit;

b.   A Court order enjoining Defendant from discharging pollutants from the National Facility without an NPDES permit;

c.   A Court order enjoining Defendant from violating the Clean Water Act and substantive and procedural requirements of the New Industrial Permit;

d.   A Court order assessing civil monetary penalties of $37,500 per day per violation for each violation of the CWA at the National Facility occurring since May 11, 2010, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4;

e.   A Court order requiring Defendant to take appropriate actions to restore the quality of waters impaired by its activities;

f.   A Court order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

/ / /

/ / /

/ / /

1            g.       Any other relief as this Court may deem appropriate.

2 Dated: February 3, 2016             Respectfully submitted,

3                              COAST LAW GROUP LLP

4

5                              By: s/Marco A. Gonzalez

6                              MARCO A. GONZALEZ
                             Attorneys for Plaintiff

7                              COASTAL ENVIRONMENTAL
                             RIGHTS FOUNDATION

8                              E-mail: marco@coastlawgroup.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory and Injunctive Relief and Civil Penalties

# EXHIBIT A

60 Day Notice Letter



1140 S. Coast Highway 101
Encinitas, CA 92024

Tel  760-942-8505
Fax  760-942-8515
www.coastlawgroup.com

**May 11, 2015**

Hugh E. Winthrop                                    **VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED**
2292 National Avenue
San Diego, CA 92113

Re:     **Clean Water Act Notice of Intent to Sue/60-Day Notice Letter**
        **National Steel & Metals**

Dear Mr. Winthrop,

Please accept this letter on behalf of the Coastal Environmental Rights Foundation (CERF) regarding National Steel & Metal's failure to enroll in the State Water Resources Control Board Water Quality Order No. 97-03-DWQ, Natural Pollutant Discharge Elimination System (NPDES), General Permit No. CAS000001, and Waste Discharge Requirements for Discharges of Storm Water Associated With Industrial Activities Excluding Construction Activities (General Industrial Permit). This letter constitutes CERF's notice of intent to sue for violations of the Clean Water Act and General Industrial Permit for National Steel & Metals (Facility), as set forth in more detail below.

Section 505(b) of the Clean Water Act requires that sixty (60) days prior to the initiation of a citizen's civil lawsuit in Federal District Court under Section 505(a) of the Act, a citizen must give notice of the violations and the intent to sue to the violator, the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the U.S. Environmental Protection Agency for the region in which the violations have occurred, the U.S. Attorney General, and the Chief Administrative Officer for the State in which the violations have occurred (33 U.S.C. § 1365(b)(1)(A)). This letter provides notice of National Steel & Metals's Clean Water Act violations and CERF's intent to sue.

I.      **Coastal Environmental Rights Foundation (CERF)**

CERF is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Encinitas, CA. CERF is dedicated to the preservation, protection, and defense of the environment, the wildlife, and the natural resources of the California Coast. Members of CERF use and enjoy the waters into which pollutants from National Steel & Metals's ongoing illegal activities are discharged, namely Chollas Creek, San Diego Bay and the Pacific Ocean. The public and members of CERF use these receiving waters to fish, sail, boat, stand up paddle board, kayak, surf, swim, scuba dive, birdwatch, view wildlife, and to engage in scientific studies. The discharge of pollutants by National Steel & Metals affects and impairs each of these uses. Thus, the interests of CERF's members have been, are being, and will continue to be adversely affected by

National Steel & Metals's Owners and/or Operators' failure to comply with the Clean Water Act and the General Industrial Permit.

## II.   <u>Storm Water Pollution and the General Industrial Permit</u>

### A.   <u>Duty to Enroll and Unpermitted Discharge</u>

The Clean Water Act prohibits the "discharge of any pollutant," unless otherwise allowed by permit.  33 U.S.C. § 1311(a). A NPDES permit must be issued before any pollutant is discharged into Waters of the United States from a point source.  33 U.S.C. § 1342(1). "Any discharge of pollutants not allowed by an NPDES permit is illegal." *(San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002). Under the Act, an NPDES permit is required when a discharger has (1) discharged (2) a pollutant (3) to waters of the United States (4) from a point source. (33 U.S.C. §§ 1311(a), 1342(a); see also *Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993).

Coverage under the General Industrial Permit for National Steel & Metals (SIC 3441) is mandatory. In order to obtain coverage under the Permit, "each facility operator must submit a Notice of Intent (NOI)." (Permit, p. 1).  In 2015 City of San Diego Storm Water staff/consultants inspected your facility and confirmed that coverage is required. Nonetheless, a NOI has not been filed for the Facility. The Facility has thus been operating in violation of the Clean Water Act since adoption of the Permit in 1997. See *Humboldt Baykeeper v. Union Pac. R.R. Co.*,2006 U.S. Dist. LEXIS 88984 (N.D. Cal.2006) ["[a]ny person who discharges or proposes to discharge pollutants … and who does not have an effective permit, except persons covered by general permits …, must submit a complete application to the Director ….", citing 40 CFR § 122.21]).

Thus, National Steel & Metals's failure to file a Notice of Intent and its continued unpermitted discharge of pollutants constitute separate and distinct violations of the Clean Water Act. (*Humboldt Baykeeper, supra,* at p. 88984 [claim for unpermitted discharge of pollutants and another for a failure to obtain a NPDES permit were two claims with "distinct legal viability."]).

### III.   <u>Remedies</u>

Upon expiration of the 60-day period, CERF will file a citizen suit under Section 505(a) of the Clean Water Act for the above-referenced violations. During the 60-day notice period, however, CERF is willing to discuss effective remedies for the violation noted in this letter. If you wish to pursue such discussions in the absence of litigation, it is suggested that you initiate those discussions immediately. If good faith negotiations are not being made, at the close of the 60-day notice period, CERF will move forward expeditiously with litigation.

CERF's action will seek all remedies available under the Clean Water Act §1365(a)(d). CERF will seek to enjoin the illegal discharges from the National Steel & Metals Facility. CERF will also seek the maximum penalty available under the law which is $37,500 per day.

**Notice of Intent to Sue: Clean Water Act**
*National Steel & Metals*
**May 11, 2015**
**Page 3**

      CERF may further seek a court order to prevent National Steel & Metals from discharging pollutants. A strong or substantial likelihood of success on the merits of CERF's claim exists, and irreparable injuries to the public, public trust resources, and the environments will result if National Steel & Metals continues its unpermitted discharge into Chollas Creek, San Diego Bay and the Pacific Ocean.

      Lastly, section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorneys' and experts' fees. CERF will seek to recover all of its costs and fees pursuant to section 505(d).

    **IV.**    <u>**Conclusion**</u>

      CERF has retained legal counsel to represent it in this matter. Please direct all communications to Coast Law Group:

> **Marco A. Gonzalez**
> **COAST LAW GROUP LLP**
> **1140 S. Coast Highway 101**
> **Encinitas, CA 92024**
> **Tel: (760) 942-8505 x 102**
> **Fax: (760) 942-8515**
> **Email: marco@coastlawgroup.com**

      CERF will entertain settlement discussions during the 60-day notice period. Should you wish to pursue settlement, please contact Coast Law Group LLP at your earliest convenience.

    Sincerely,

    **COAST LAW GROUP LLP**

    **Marco A. Gonzalez**

    **Livia Borak**
    Attorneys for
    Coastal Environmental Rights Foundation

CC:

**Notice of Intent to Sue: Clean Water Act**
*National Steel & Metals*
**May 11, 2015**
**Page 4**

| | |
|---|---|
| Jared Blumenfeld, Region 9 Administrator<br>Alexis Strauss, Deputy Regional Administrator<br>U.S. EPA, Region 9<br>75 Hawthorne Street<br>San Francisco, CA, 94105 | Dave Gibson, Executive Officer<br>Catherine Hagan, Staff Counsel<br>San Diego Regional Water Quality Control Board<br>2375 Northside Drive, Suite 100<br>San Diego, CA 92108-2700 |
| Gina McCarthy<br>EPA Administrator<br>Mail Code 4101M<br>US EPA Ariel Rios Building (AR)<br>1200 Pennsylvania Avenue N.W.<br>Washington, DC 20004 | Thomas Howard<br>Executive Director<br>State Water Resources Control Board<br>P.O. Box 100<br>Sacramento, CA 95812–0110 |